# In the United States Court of Federal Claims

No. 12-652C

**This Opinion and Order Will Not Be Published in the U.S. Court of Federal Claims
Reporter Because They Do Not Add Significantly to the Body of Law.**

(Filed:  December 15, 2014)

_____

|  |  |
|---|---|
| RAMONA INVESTMENT GROUP II, A CALIFORNIA LIMITED PARTNERSHIP, | * * * * |
| Plaintiff, | * * |
| v. | * * |
| THE UNITED STATES, | * * |
| Defendant. | * |

_____

## OPINION and ORDER

_____

In this contract case, Ramona Investment Group II (plaintiff) seeks damages under the Tucker Act, 28 U.S.C. § 1491(a)(1), claiming that defendant repudiated its loan agreement with plaintiff, thereby effectuating both a breach of contract and a taking.  Defendant has moved to dismiss the complaint, pursuant to RCFC 12(b)(1), asserting that this court lacks subject matter jurisdiction.  For the reasons that follow, the court hereby **DENIES** defendant's motion.

## I.    BACKGROUND

Only a few facts are necessary in order to provide context.

On or about November 22, 1985,[1] plaintiff and the Farmers Home Administration (FmHA), United States Department of Agriculture,[2] entered into a loan agreement (the loan agreement) pursuant to sections 515 and 521 of the National Housing Act of 1949, as amended,

_____

[1]  The loan agreement is dated August 20, 1985; a promissory note, deed of trust, and rider to the deed of trust or mortgage, are dated November 22, 1985.

[2]  Rural Housing Services is the successor agency to the FmHA.

42 U.S.C. § 1485 (the 515 program).  Under the 515 program, plaintiff received a low-interest mortgage loan from the FmHA in exchange for providing funds to construct, rehabilitate, or improve a housing project known as the Countryside II Apartments.[3]  The contract terms, memorialized in the aforementioned loan agreement, promissory note, and mortgage, provided that the FmHA would make a lower-interest loan to Ramona, and in return, Ramona would abide by certain restrictive-use covenants, such as renting only to eligible low-income tenants.  Those covenants would remain in place for the life of the mortgage, unless Ramona exercised an option of prepaying the loan, thereby leaving the 515 program.  Under the terms of the loan agreement, Ramona had an absolute right to exercise that option after 20 years.

Over time, the number of 515 program borrowers prepaying their mortgages outpaced the number of new entrants into the program, causing the supply of low-income rural housing to dwindle.  In 1988, Congress enacted the Emergency Low Income Housing Preservation Act (ELIHPA), Pub. L. No. 100–242, 101 Stat. 1877 (codified at 42 U.S.C. § 1472), which restricted the prepayment of certain section 515 mortgages.  *See Tamerlane, Ltd. v. United States*, 550 F.3d 1135, 1137 (Fed. Cir. 2008), *cert. denied*, *sub nom. Mullica W. Ltd. v. United States*, 557 U.S. 919 (2009); *Franconia*, 61 Fed. Cl. at 723.  ELIHPA directed the FmHA not to accept tenders of prepayments, but instead to seek to negotiate with borrowers by offering various incentives to stay in the 515 program.  *See Franconia Assocs. v. United States*, 536 U.S. 129, 136 (2002); *Tamerlane*, 550 F.3d at 1137-38; *Ramona Inv. Grp. v. United States*, 115 Fed. Cl. 704, 705-06 (2014).  The prepayment restrictions were extended by Congress through 1989 via the Housing and Community Development Act of 1992 (HCDA), Pub. L. No. 102–550, 106 Stat. 3672 (codified in relevant part at 42 U.S.C. § 1472(c)).  *See Franconia*, 536 U.S. at 135.  These statutes had the effect of repudiating the agreements defendant had with Ramona.

On August 6, 2004, plaintiff filed a complaint in this court seeking relief for a breach of contract and just compensation under the Fifth Amendment.  In the complaint, plaintiff elected to treat Congress's limitations on prepayment as an anticipatory repudiation, treating a breach of contract as arising on the date that plaintiff would have achieved its option of terminating its loan agreement.  Plaintiff indicated its intention to prepay upon the expiration of the restrictive-use clause in its lease agreement.

On October 4, 2006, plaintiff submitted to the FmHA a request to prepay, with an intended prepayment date of July 1, 2007.  Upon receipt of this request, the FmHA notified plaintiff of a policy not to process prepayment requests while a lawsuit involving the same property is pending; FmHA indicated that if plaintiff wanted to pursue prepayment, it would have to terminate the lawsuit.  Plaintiff chose to comply with the FmHA's policy and, pursuant to RCFC 41(a)(1), voluntarily dismissed the lawsuit, without prejudice, on February 20, 2007.  On March 2, 2007, the FmHA acknowledged the dismissal and notified plaintiff that it would begin reviewing its prepayment application.  Later, the FmHA required plaintiff to resubmit its application, which plaintiff did on May 24, 2011.  On September 17, 2012, the FmHA sent

---

[3]  For a more extensive description of the 515 program, *see Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 722–24 (2004).

plaintiff an email indicating that it was currently unable to process any requests due to a directive from FmHA's National Office.

On September 28, 2012, plaintiff filed its complaint in this court. On December 7, 2012, defendant filed its answer. On January 23, 2014, defendant filed a motion to dismiss under RCFC 12(b)(1), alleging that Ramona's complaint was untimely. The motion is fully briefed. The court finds oral argument unnecessary.

## II.   DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Compliance Solutions Occupational Trainers, Inc. v. United States*, 118 Fed. Cl. 402, 405-06 (2014). Plaintiff must establish that the court has subject-matter jurisdiction over its claims. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Compliance Solutions Occupational Trainers*, 118 Fed. Cl. at 406.

Here, that jurisdictional journey begins with 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The six-year limitation in section 2501 is "jurisdictional" and absolute in its terms. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008); *Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1572 (Fed. Cir. 1994). This statute of limitation is "an express limitation on the waiver of sovereign immunity [and] may not be waived." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988); *see also FloorPro, Inc v. United States*, 680 F.3d 1377, 1380-81 (Fed. Cir. 2012); *Hart v. United States*, 910 F.2d 815, 818-19 (Fed. Cir. 1990); *Ewer v. United States*, 63 Fed. Cl. 396, 399 (2004).

"Naturally, the date that the six-year period expires depends on the date when it began; in other words, the date when the claim first accrued." *Ramona Inv. Grp.*, 115 Fed. Cl. at 707; *see also Holloway v. United States*, 60 Fed. Cl. 254, 256 (2004), *aff'd*, 143 Fed. Appx. 313 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 876 (2005). Where the cause of action is for a breach of contract, a claim accrues under section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1177 (2004) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)); *see also San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1359 (Fed. Cir. 2011); *Bianchi v. United States*, 475 F.3d 1268, 1274 (Fed. Cir. 2007); *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1455 (Fed. Cir. 1997). Here, it is undisputed that defendant first denied Ramona's attempt to prepay on July 1, 2007. And, it would appear that that date – when defendant first denied plaintiff's attempt to prepay – is when the claim in question accrued. If that is so, it would appear that the suit in question was timely.

Contrary to defendant's claim, it does not appear that the claim accrued either when the original suit was filed in 2004, or when the first case here was voluntarily dismissed in 2007. Certainly, the latter does not appear to be the case. Contrary to defendant's argument, it is well-accepted that "[t]he effect of a dismissal *without* prejudice is to place the plaintiff in the *same* legal position it would have been in if he had never brought the suit." *Standard Space Platforms Corp. v. United States*, 38 Fed. Cl. 461, 467 (1997); *see also Jorge v. Rumsfeld*, 404 F.3d 556, 563 (1st Cir. 2005); *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976)). Rather, "[a] voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity'" *Bonneville Assocs., Ltd. P'ship v. Barram*, 165 F.3d 1360, 1364 (Fed. Cir. 1999), *cert. denied*, 528 U.S. 809 (quoting *Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir. 1996)), that is, the suit "is treated as if it had never been filed." *Beck v. Caterpillar Inc.*, 50 F.3d 405, 407 (7th Cir. 1995).[4] Application of Rule 41(a) here has the effect of nullifying Ramona's filing of its 2004 complaint, with the effect of starting the statute of limitations in 2007 – making the suit filed in 2012 timely. *See Ramona*, 115 Fed. Cl. at 708.

Not so, defendant claims, asserting that the filing of a suit based on an anticipatory repudiation is somehow an exception to this rule – that the statute of limitations here continued to run, rendering the complaint here untimely. But, defendant is flatly wrong. In arguing otherwise, it relies on *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), in which the Supreme Court held that a district court could impose Rule 11 sanctions after the plaintiff voluntarily dismissed an action. But, as Judge Wheeler recently recognized in his *Ramona* opinion, *Cooter & Gell* "merely affirmed the well-established rule that courts retain jurisdiction to 'consider collateral issues after an action is no long pending.'" *Ramona*, 115 Fed. Cl. at 708. The Supreme Court "[i]n reality . . . did nothing to limit the nullifying effect of a dismissal on an underlying dispute." *Id*.[5] Thus, contrary to defendant's assertions, *Cooter & Gell* does not remotely suggest a general exception to Rule 41(a)(1) is lurking here. And Judge Wheeler so held on essentially identical facts in *Ramona*, 115 Fed. Cl. at 707-08.

---

[4] *See also Stone Container Corp. v. United States*, 229 F.3d 1345, 1353-54 (Fed. Cir. 2000), *cert. denied,* 532 U.S. 971 (2001); 9 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice and Procedure* § 2367 (3d ed. 2014) (a voluntary dismissal "effectively erases the dismissed action and permits the initiation of a second action").

[5] As was further explained by Judge Wheeler in *Ramona*:

The Supreme Court reasoned that once a litigant abuses the judicial system, the harm 'has already occurred,' and therefore a voluntary dismissal cannot 'expunge the Rule 11 violation.' [*Cooter & Gell*, 496 U.S. at 395]. That reasoning does not apply here, for unlike the commission of a Rule 11 violation, the filing of a complaint *can* be undone. In fact, this is precisely the purpose of voluntary dismissal as recognized by Rule 41.

115 Fed. Cl. at 708.

Grasping at straws, defendant finally seeks to persuade the court by making yet another argument (one not made until its reply brief in this case) – *to wit*, the notion that plaintiff's election of a contractual remedy here had the effect of locking plaintiff into the original statute of limitations, *i.e.*, the one applicable to the 2004 claim.  Apparently, defendant argues that once a plaintiff seeks relief under the Tucker Act and then voluntarily dismisses its suit, the Tucker Act option is lost forever.  In making this argument, however, defendant cites only a few cases under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101, *et seq.,* such as *Tuttle/White Constructors, Inc. v. United States*, 656 F.2d 644, 647 (Ct. Cl. 1981) – apparently like ol' Dobbin donning blinders to the obvious fact that this is not a CDA case.  More importantly, there is no indication that these cases, and the election doctrine that applies in some CDA cases,[6] have anything to do with the Tucker Act and the voluntary dismissal doctrine applicable here.

Indeed, defendant offers no rationale why the court should treat plaintiff as having made any election of the sort defendant claims to exist.  As Judge Wheeler recognized in *Ramona* –

> It strikes this Court as logically incoherent and patently unfair to find that a dismissed suit has a decisive legal effect on starting the statute of limitations period, but zero effect on its tolling.  That conclusion is amplified by the circumstances of this case, where Ramona dismissed its first action because the USDA required such dismissal as a precondition for entering negotiations necessitated by the USDA's renunciation of its contractual duty – negotiations that the USDA later abandoned.  Indeed, just as a "plaintiff should not be penalized for leaving to defendant an opportunity to retract his wrongful repudiation," before his performance comes due, *Franconia*, 536 U.S. at 146, a plaintiff likewise should not be penalized for affording the defendant the same opportunity through a Rule 41(a)(1) dismissal.

115 Fed. Cl. at 708.  The court agrees with Judge Wheeler that the result defendant seeks would be "logically incoherent and patently unfair" (a result that should bother defendant, but apparently does not).

Defendant's arguments do not remotely persuade the court to grant defendant's motion. Plaintiff's voluntary dismissal of the 2004 lawsuit had the effect of placing it in the same legal position as if it had never filed the original suit.  The statute of limitations did not begin to run in 2007.  The current lawsuit was timely filed.  The law is clear.  Defendant's claims to the contrary are hereby rejected.  *Id.*

---

[6]   In relying on these CDA cases, defendant apparently overlooks those that have limited the "election doctrine" in the CDA context.  *See Nat'l Neighbors, Inc. v. United States*, 839 F.2d 1539, 1541-42 (Fed. Cir. 1988) (discussing the limitations of the election doctrine); *Santa Fe Eng'rs, Inc. v. United States*, 677 F.2d 876, 878 (Ct. Cl. 1982); *Gregory Lumber Co. v. United States*, 230 Ct. Cl. 745, 747-78 (Ct. Cl. 1982).

### III.      CONCLUSION

The court will not gild the lily.  For the reasons stated, the court hereby **DENIES** defendant's motion to dismiss the complaint under RCFC 12(b)(1).  On or before January 16, 2015, the parties shall file a joint status report indicating how this case should proceed.  Before that report is filed, the parties shall have at least one serious discussion regarding the potential for settling this case.

   **IT IS SO ORDERED**.


                                        s/Francis M. Allegra
                                        Francis M. Allegra
                                        Judge